**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
LEDWIN CASTRO,

                    Petitioner,

       -against-

UNITED STATES OF AMERICA,

                    Respondent.
----------------------------------------------------------X

**FILED**
**CLERK**

1/29/2014 2:52 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM OF**
**DECISION AND ORDER**
12-cv-5024 (ADS)

**APPEARANCES:**

**Ledwin Castro** *Pro Se*
68721-053
Big Sandy U.S. Penitentiary
P.O. BOX 2068
INEZ, KY 41224

**United States Attorney for the Eastern District of New York**
*Attorneys for the Respondent*
610 Federal Plaza
Central Islip, NY 11722
        By: John Joseph Durham
          Charles N. Rose, Assistant United States Attorneys

**SPATT, District Judge.**

      The presently incarcerated Petitioner Ledwin Castro (the "Petitioner")

brings this petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2255 on the

ground that he was denied his constitutional right to effective assistance of counsel.

For the reasons that follow, the petition is denied.

# I.      BACKGROUND

A.  The Drive-By Shootings and the Arrest

The Petitioner is an admitted member of MS-13, a nationwide criminal gang organized into local subunits referred to as "cliques."  David Vasquez was a member of a Long Island clique headed by the Petitioner known as the Freeport Locos Salvatruchas.  The evidence at the first trial showed that, on June 18, 2003, the Petitioner, along with several others, including Vasquez, Ralph Admettre, and Nieves Argueta, drove to a laundromat in Hempstead to search for members of SWP, a rival gang.  From a van parked in a gas station parking lot across the street, Vasquez opened fire on a crowd outside the laundromat, wounding Ricardo Ramirez and Douglas Sorto.

Less than an hour later, the Petitioners and the others traveled to a delicatessen in Freeport where they encountered a group of young black men that they believed to be members of the Bloods, another rival gang.  At Vasquez's urging, Argueta shot Carlton Alexander seven times in the back.  Despite being struck by multiple gunshots, Alexander survived.  Between July 10, 2003 and July 17, 2003, the Nassau County Police Department arrested Castro, Vasquez, Admettre, and Argueta for their roles in the shootings.

Following Castro's arrest, he and his defense counsel met with then Nassau County Assistant District Attorney Frank X. Schroeder.  Based upon these discussions, the Nassau County District Attorney's Office ("NCDAO") determined that Castro was willing to provide important information concerning the homicide of Jaime Figueroa.  Ultimately, the NCDAO offered Castro the opportunity to plead

to a lesser charge in connection with the June 18, 2003 shootings in exchange for his cooperation in the Figueroa homicide prosecution. Pursuant to this agreement, the NCDAO called Castro as a witness in a grand jury proceeding related to the Figueroa homicide. Before the grand jury, Castro testified that he was a member of MS–13 and stated that Johnny Rodas and Mario Jimenez, fellow MS–13 gang members, admitted to him that they murdered Figueroa.

On May 12, 2004, former ADA Schroeder was cross-designated to serve as a Special Assistant United States Attorney to assist in the United States Attorney's Office's investigation of MS–13.

B. Indictment and the First Trial

Meanwhile, in February 2004, a federal grand jury indicted the Petitioner and thirteen others for various offenses stemming from a series of violent incidents on Long Island between August 2000 and September 13, 2003. A superseding indictment (the "Indictment") was returned on June 23, 2005. The Indictment described MS–13, or "La Mara Salvatrucha," as a gang that originated in El Salvador but had members throughout the United States. It accused the defendants of being members of MS–13, and it alleged that MS–13 members "engaged in criminal activity" in order to increase their position within the organization. According to the Indictment, MS–13 constituted an "enterprise" under 18 U.S.C. § 1959(b)(2) because it was an ongoing organization the activities of which affected interstate commerce. Furthermore, the Indictment stated that MS–13 engaged in two forms of racketeering activity under 18 U.S.C. § 1961(1): (1) acts and threats

involving murder as defined by New York State law, and (2) narcotics trafficking as defined by federal law.

The Indictment charged the Petitioner with ten counts. Count One charged him with conspiracy to commit assaults with a dangerous weapon in order to maintain and increase his position within the MS–13 racketeering enterprise, in violation of 18 U.S.C. § 1959(a)(6). Counts Six, Seven, and Eight charged the Petitioner with assault with a dangerous weapon in order to maintain or increase his position in the MS–13 racketeering enterprise, in violation of 18 U.S.C. § 1959(a)(3). Counts Twelve, Thirteen, and Fourteen accused the Petitioner of discharging a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). The Indictment identified the relevant crimes of violence as the assaults charged in Counts Six, Seven, and Eight. Finally, Counts Seventeen, Eighteen, and Nineteen charged the Petitioner with using an explosive to commit a felony – the felonies being the assaults charged in Counts Six, Seven, and Eight – in violation of 18 U.S.C. § 844(h)(1).

Judge Leonard D. Wexler of the Eastern District of New York, who was originally assigned to the criminal case, severed the charges against the Petitioner and co-defendant Vasquez from the charges against some of their co-defendants. The remaining co-defendants pleaded guilty to assault. The Petitioner, and Vasquez, proceeded to trial. During the course of the trial, which took place between July 19, 2005 and July 26, 2005, the Government called Hector Alicea, an officer with the New York State Police, as an expert witness. In particular, Alicea testified to MS-13's history, structure, and modes of communication.

The Government also called the three shooting victims, Admettre, and another co-defendant to testify against the Petitioner and Vazquez. In addition, the Government offered into evidence telephone records, the gun used in the shootings, ballistics reports, and the Petitioner's post-arrest confession.

C. The First Jury Verdict and Sentencing

Of relevance here, on July 26, 2005, the jury found the Petitioner guilty on all ten counts. In a special verdict, the jury further found that MS–13 was an enterprise that affected interstate commerce; that MS–13 engaged in acts and threats of murder; that the Petitioner was a member of the MS–13 enterprise; and that the Petitioner had participated in the conspiracy to assault and in the charged assaults in order to maintain or increase his position within MS–13. However, the jury failed to find that MS–13 engaged in the racketeering activity of narcotics trafficking.

One week later, the Petitioner asked the district court to set aside the verdict and enter a judgment of not guilty pursuant to Federal Rule of Criminal Procedure ("Fed. R. Crim. P.") 29, or in the alternative, to vacate the judgment and order a new trial pursuant to Fed. R. Crim. P 33. First, he claimed that the jury's failure to find that MS–13 engaged in narcotics trafficking was fatal to the verdict because the Indictment had not pleaded the two racketeering activities (murder and narcotics trafficking) in the alternative. Second, he argued that the proof of MS–13's involvement in murder was insufficient. Third, he asserted that the Government had failed to prove that the MS–13 enterprise had an existence separate from the charged offenses. The district court docket does not indicate when or how the

district court denied the motion, but that it did so is clear from the progression of the case to sentencing.

On January 6, 2006, the district court sentenced Castro principally to 60 years plus 1 day of imprisonment. The 1 day consisted of concurrent 1-day sentences for the conspiracy count (Count One) and the three assault charges (Counts Six, Seven, and Eight).

D.  The First Appeal

On appeal, the Petitioner contended, among other things, that the district court erred in allowing the Government to call Alicea as an expert witness and that Alicea's testimony violated the Federal Rules of Evidence and Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). He also contended that the Government failed to prove that MS-13 was a racketeering enterprise.

On October 6, 2008, the Second Circuit vacated the conviction of the Petitioner and remanded the case to the District Court finding that Alicea's testimony violated the Confrontation Clause of the Sixth Amendment and Fed. R. Evid. 703 because Alicea had taken out of court statements obtained from MS-13 members during custodial interrogations and conveyed the substance of those statements to the jury. United States v. Mejia, 545 F.3d 179, 199 (2d Cir. 2008). The Second Circuit concluded that, under the circumstances, Alicea was "simply summarizing an investigation by others that [was] not part of the record and presenting it in the guise of an expert opinion." Id. (internal quotation marks and citations omitted). The Second Circuit further found that admitting Alicea's

testimony was not harmless error because his testimony bore heavily on the material issues of whether MS-13 was an enterprise and whether the gang had engaged in acts and threats of murder. Id. at 200.

E.   The Second Jury Verdict and Sentence

On remand, the criminal case was reassigned to this Court.

At the second trial, the Petitioner was represented by Peter J. Tomao, Esq. and Michael Annibale, Esq.  Following a re-trial, on October 14, 2009, a jury convicted the Petitioner on all seven counts charged in the Third Superseding Indictment.  In particular, he was convicted of conspiracy to commit assault with a dangerous weapon, 18 U.S.C. § 1959(a)(6) (Count One), assault with a dangerous weapon, 18 U.S.C. § 1959(a)(3) (Counts Two, Three, and Four), and the use of a firearm in relation to a crime of violence, 18 U.S.C. § 924(c)(1) (Counts Five, Six, and Seven).

On December 30, 2009, the Court sentenced the Petitioner to imprisonment for 60 years and one day confinement.  A judgment was entered on January 12, 2010.

F.   The Second Appeal

On his second appeal, the Petitioner claimed that (1) the government failed to establish the existence of the racketeering enterprise charged in the Third Superseding Indictment; (2) several of the district court's evidentiary and discovery rulings were incorrect; and (3) his case should be remanded for resentencing because certain counts of conviction were "duplicitous."  On the appeal, the Petitioner was represented by Tomao.

On February 24, 2011, the Second Circuit affirmed the conviction and sentence, rejecting the Petitioner's arguments.

On October 3, 2011, the United States Supreme Court denied the Petitioner's request for a writ of certiorari.

G. The Present Petition

In the interim, the Petitioner filed a *pro se* petition pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence. The Petitioner contends that trial counsel (1) failed to object to a purportedly prejudicial error in the Court's jury instruction on the standard for the government's burden of proof; (2) failed to move to suppress the Petitioner's incriminating post-arrest statements allegedly obtained in violation of his Fifth and Sixth Amendment rights; (3) failed to object to the Court's in-camera questioning of a juror, thereby violating the Petitioner's Fifth and Sixth Amendment rights and Fed. R. Crim. P. 43; (4) failed to move to dismiss the charges based on the alleged absence of a jurisdictional interstate nexus for the charged MS-13 enterprise; and (5) failed to move to dismiss the Third Superseding Indictment pursuant to the government's "Petite Policy." In addition, the Petitioner asserts that his appellate counsel failed to raise these legal arguments on appeal.

## II. DISCUSSION

A. Section 2255 Generally

Relief is available under 28 U.S.C. § 2255 "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Cuoco v. United States, 208 F.3d 37, 30 (2d Cir. 2000) (internal quotations and

citations marks omitted).  The Court's discretion to grant relief under section 2255 is to be exercised sparingly, for such applications "are in 'tension with society's strong interest in the finality of criminal convictions.'" Elize v. United States, 2008 WL 4425286, at *5 (E.D.N.Y. Sept.30, 2008) (NGG) (internal citations omitted); see also Brecht v. Abrahamson, 507 U.S. 619, 633-34, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993) ("the writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness," and "[t]hose few who are ultimately successful [in obtaining habeas relief] are persons whom society has grievously wronged and for whom belated liberation is little enough compensation") (internal quotations and citations omitted).

Further, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." Bousley v. United States, 523 U.S. 614, 622, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) (internal quotations omitted).  However, claims of ineffective assistance of counsel "may be brought in a collateral proceeding under § 2255 whether or not the petitioner could have raised the claim on direct appeal." Massaro v. United States, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003).

B.  Ineffective Assistance of Counsel Generally

A claim of ineffective assistance of counsel can be sustained only if counsel's representation fell below an objective standard of reasonableness and

there is a reasonable probability that absent counsel's errors the outcome of the proceedings would have been different. Strickland, 466 U.S. at 687–88, 104 S. Ct. 2052, 80 L. Ed. 2d 674; Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998). Assuming counsel is prepared with the relevant facts and appropriate legal standards, strategic decisions regarding the challenging of evidence and witnesses cannot be second-guessed in an effort to support an ineffective assistance of counsel claim. See United States v. DiPaolo, 804 F.2d 225, 234 (2d Cir. 1986); Gonzalez v. United States, 337 F. Supp. 2d 419, 423 (E.D.N.Y. 2004). Rather, the "ultimate focus of inquiry" is "whether . . . the result of the particular proceeding is unreliable because of a breakdown in the adversarial process." Strickland, 466 U.S. at 696, 104 S. Ct. 2052; see e.g. United States v. Reiter, 897 F.2d 639, 645 (2d Cir. 1990) (affirming rejection of the ineffective assistance of counsel claim even though defense counsel's failure to move to suppress evidence, poor cross-examination, and frequent lateness and absences fell below professionally reasonable standards, given the overwhelming evidence of the defendant's guilt).

The Court now considers, in turn, the alleged bases for the Petitioner's claims of ineffective assistance of counsel.

C. The Pinkerton Charge

Under the Supreme Court's decision in Pinkerton v. United States, 328 U.S. 640, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946), it is a "fundamental tenet of the law of conspiracy" that a defendant can be held criminally liable for the reasonably foreseeable acts of his co-conspirator. United States v. Vario, 943 F.2d 236, 240 (2d Cir. 1991). As the Second Circuit has explained, "[t]he Pinkerton theory permits

criminal liability of a conspirator 'for the substantive crimes committed by his co-conspirators to the extent those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if he did not himself participate in the substantive crimes.'" United States v. Bala, 236 F.3d 87, 95 (2d Cir. 2000) (quoting United States v. Romero, 897 F.2d 47, 51 (2d Cir. 1990)); see also United States v. Parkes, 497 F.3d 220, 232 (2d Cir. 2007) (holding that, with respect to Pinkerton, "'a defendant who does not directly commit a substantive offense may nevertheless be liable if the commission of the conspiracy was reasonably foreseeable to the defendant as a consequence of their agreement'") (quoting Cephas v. Nash, 328 F.3d 98, 101 n. 3 (2d Cir. 2003)); accord United States v. Wiley, 846 F.2d 150 (2d Cir. 1988).

Here, the Petitioner first argues that, in the Pinkerton charge, the Court improperly instructed the jury on the presumption of innocence and that counsel's failure to object to these instructions violated his Sixth Amendment right to effective assistance of counsel. Specifically, the Petitioner maintains that the use of the word "may" rather than "must" in the following Pinkerton instruction was constitutionally deficient:

> If the government has proven all five bases of these elements, beyond a reasonable doubt, for the specific substantive crime you are considering, then you may find the defendant guilty of the substantive crimes charged in Counts Two through Seven, even if he did not personally participate in the acts constituting the substantive crime. The reason for this rule is simply that a coconspirator who commits a substantive crime pursuant to a conspiracy is deemed to be the agent of the other conspirators.
>
> If, however, the government failed to prove any of these five elements, then you may not find the defendant guilty of the

substantive crime charged in the count you are considering. Namely, Counts Two through Seven, unless the government proved beyond a reasonable doubt, that the defendant personally committed or aided and abetted the commission of the crime charged in those counts.

(Transcript ("Tr."), at 1675.)(emphasis added).

In United States v. Birbal, 62 F.3d 456 (2d Cir. 1995), relied on by the Petitioner, the district court judge advised the jury that it "may" rather than "must" acquit if the government failed to prove guilt beyond a reasonable doubt. Id. at 460. The Second Circuit found that the instructions "gave the jury the clearly unlawful option of convicting on a lower standard of proof." Id. The Second Circuit held that the "standard instruction . . . that 'If the government fails to sustain its burden you must find the defendant not guilty.' . . . unlike much of the suggested language in the various pattern instructions, is not optional." Id. (internal citations omitted).

However, here, the Court finds no error in the Pinkerton charge. The Court observes no material difference between the directive to jurors that, if the government fails to meet its burden of proof, they "must find the defendant not guilty" and "may not find the defendant guilty." Therefore, "the [C]ourt's instructions properly described the presumption of innocence, and petitioner's counsel did not err by neglecting to object to them." Rodriguez v. United States, 11 CIV. 2957 (TPG), 2013 WL 6171618, at *5 (S.D.N.Y. Nov. 25, 2013)(distinguishing Birbal).

D.      Petitioner's Post-Arrest Statements

The Petitioner also asserts that trial counsel failed to move to suppress his incriminating post-arrest statements obtained allegedly in violation of his Fifth and

Sixth Amendment rights. The Government counters that this claim fails on its face because trial counsel, in fact, moved for suppression of the very statements that are the alleged basis for the ineffective assistance of counsel claim; the Government opposed the motion; and Magistrate Judge E. Thomas Boyle conducted a hearing on the suppression motion and recommended that this Court deny the motion, which this Court did. The Petitioner replies that trial counsel was ineffective for failing to move to suppress the self-incriminating statements, in particular, on double jeopardy grounds.

The Double Jeopardy Clause states: "No person shall be . . . subject for the same offense to be twice put in jeopardy of life or limb. . . ." U.S. Const. amend. V. The Double Jeopardy Clause of the Fifth Amendment protects a defendant against three distinct abuses: "a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." United States v. Halper, 490 U.S. 435, 440, 109 S. Ct. 1892, 1897, 104 L. Ed. 2d 487 (1989), overruled on other grounds by Hudson v. United States, 522 U.S. 93, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997).

Here, the Court finds that none of these potential abuses is implicated and, therefore, any argument based on double jeopardy relating to the admission of the self-incriminating statements would have been futile. Narducci v. United States, No. 3:99 CR 248, 2003 WL 21488716, at *2 (D. Conn. Jun.23, 2003) (counsel was not ineffective for failure to object to the presentence report's criminal history or for failure to ask government for additional proof of defendant's prior convictions in the form of certified copies of conviction, because such requests would have been

frivolous); <u>Rodriguez–Quezada v. United States</u>, Nos. 06 Cr. 188, 08 Civ. 5290, 2008 WL 4302518, at *2 (S.D.N.Y. Sept.15, 2008) (counsel was not ineffective for failing to argue that U.S.S.G. § 2L1.2 impermissibly raised offense level based on prior convictions because, among other things, the Second Circuit had rejected that argument); <u>Williams v. United States</u>, No. 07 CV 1804, 2012 WL 1116403, at *14 (E.D.N.Y. Mar. 30, 2012) (counsel was not ineffective for failure to pursue frivolous or non-meritorious claims).

First, the Court notes that there was no acquittal of the same offense. Second, the Court finds that the admission of the self-incriminating statements does not itself constitute a "prosecution" or "punishment" for purposes of double jeopardy. In this regard, the Petitioner appears to conflate the Fifth Amendment's protection against self-incriminating statements and its protection against double jeopardy.

To the extent the Petitioner contends that the federal prosecution after the state prosecution violates double jeopardy principles, the Court previously rejected this argument. Indeed, the Court found that, under the "dual sovereignty" doctrine, "successive prosecutions by state and federal authorities for the same crime generally do not offend the Double Jeopardy Clause," notwithstanding, as here, some degree of cooperation between the state and federal authorities. <u>Castro</u>, 659 F. Supp. 2d at 418-420.

Thus, the Court finds that trial counsel did not render constitutionally deficient performance by failing to move to suppress the self-incriminating statements on double jeopardy grounds.

E.  In-Camera Questioning of the Juror

In this case, during a break in the direct examination of one of the government's witnesses, the Court informed the parties in open court that a juror had indicated to a court security officer that the juror may have known one of the marshals seated behind the Petitioner and requested guidance from counsel about how to proceed. Tr. at 970-71.  At the request of defense counsel, the Court indicated that it would "interview the juror outside of the courtroom." Id.  The Court then conducted a sealed, "on the record," inquiry of the juror. Id. at 971-76. The Court reported back to the parties in open court regarding the gist of the in-camera discussion with the juror and stated, "I asked him several times whether it would affect his judgment.  He said no.  He just mentioned that he happened to know the man. That's all.  I don't see any harm whatsoever by this." Id. at 977.  The Petitioner now claims that trial counsel should have requested his presence at the in-camera exchange between the Court and the aforementioned juror.

The Due Process Clause of the Fifth Amendment entitles a criminal defendant "to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." Faretta v. California, 422 U.S. 806, 819 n. 15, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); accord Cohen v. Senkowski, 290 F.3d 485, 489 (2d Cir. 2002).  As the Supreme Court has explained, however, "'[t]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'" United States v. Gagnon, 470 U.S. 522, 526, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985) (quoting Snyder v. Massachusetts, 291 U.S. 97, 105-06, 108, 54 S. Ct. 330, 78 L. Ed. 674

(1934)). The Supreme Court has also observed that "the exclusion of a defendant from a trial proceeding should be considered in light of the whole record." Id. at 526–27, 105 S. Ct. 1482.

In this case, even assuming the Petitioner's absence from the hearing implicated a constitutional right to be present at the in-camera exchange, the Court finds that the Petitioner waived that right. See Wright v. Smith, 9:03 CV 806 (DNH), 2007 WL 2412248, at *15 (N.D.N.Y. Aug. 21, 2007)([E]ven assuming [the Petitioner's] absence from the hearing somehow implicated his constitutional right to be present, petitioner waived that right"), aff'd, 348 F. App'x 612 (2d Cir. 2009). "Although trial courts must vigorously safeguard a criminal defendant's right to be present, a defendant may expressly or effectively waive the right." United States v. Fontanez, 878 F.2d 33, 36 (2d Cir. 1989). A defendant may waive his right to be present as long as the waiver is made knowingly and voluntarily. See Clark v. Stinson, 214 F.3d 315, 323 (2d Cir. 2000). "Although it is certainly preferable that the waiver come from the defendant directly, there is no constitutional requirement to that effect," Id. at 324 (internal quotation marks and citations omitted), as demonstrated by the Supreme Court's language and holding in Gagnon, 470 U.S. at 529, 105 S. Ct. 1482, 84 L. E. 2d. 486 (in order to preserve the right to attend proceedings that "do not take place in open court, the defendant *or his counsel* must assert that right at the time") (emphasis added).

Here, the Court conducted the in-camera exchange with the juror at defense's counsel's request. There is no indication in the record that, at that point, the Defendant lodged an objection or asserted a need for further questioning, nor

did the Petitioner or his counsel request to be present at this inquiry of the juror. See United States v. Jones, 381 F.3d 114, 122 (2d Cir. 2004) (holding that the defendant waived his right to be present when he "never objected to his absence from the in-chambers hearing, even though he was present during the subsequent hearing in open court when the court made its ruling"); Pounce v. McLaughlin, No. 04 CV 668 (JG), 2004 WL 2360037, at *8 (E.D.N.Y. Oct. 20, 2004) (finding that the defendant's presence in the court when the trial judge announced that the juror would remain was a "sufficient opportunity" for the defendant to object to his absence during articulation of "for cause" and peremptory challenges). The Court finds that the Petitioner's silence at that point resulted in an implicit waiver of any right to be present at the in-camera exchange. See Gagnon, 470 U.S. at 529; see also United States v. Peterson, 385 F.3d 127, 138-39 (2d Cir. 2004) (holding that the defendants waived any right they may have had to attend an in-camera inquiry of a potentially tainted juror where counsel agreed to the judge's suggestion to conduct questioning absent counsel and the defendants, and stating that "[a] rule allowing the defendants, as well as their trial counsel, to stay silent at trial and then claim . . . that their absence constitutes reversible error will only encourage 'sandbagging'"); Jones, 381 F.3d at 122 (finding waiver of right to be present where the defendant and his counsel had an opportunity to raise an objection to the in camera conferences, but failed to raise the issue until the appeal); Pellington v. Griener, 307 F. Supp. 2d 601, 605-06 (S.D.N.Y. 2004)(finding an implicit waiver although the petitioner "did not expressly or personally waive his right to attend juror

conference" where he was aware of the conference and "neither [petitioner] nor his counsel objected to [petitioner's] absence"),

Similarly, the Court finds that the Petitioner waived any right to be present under Fed. Crim. R. P. Rule 43, which provides in pertinent part that "[t]he defendant must be present at . . . (2) every trial stage" but that "[a]defendant who was initially present at trial" may waive that right. Fed. R. Crim. P. 43(a)(2), (c)(1); see Gagnon, 470 U.S. at 528, 105 S. Ct. 1482 (finding that the Rule 43 right to be present was waived where "[n]o objections of any sort were lodged, either before or after" the alleged violation).

The Petitioner also asserts that trial counsel should have challenged the subject juror for cause. However, to maintain a claim of ineffective assistance of counsel based on the failure to object to a biased juror, the Petitioner must show that the juror was actually biased against him. See Brown v. Doe, 803 F. Supp. 932, 943 (S.D.N.Y. 1992) (citing Murphy v. Florida, 421 U.S. 794, 800, 95 S. Ct. 2031, 44 L. Ed. 2d 589 (1975)). Actual bias can be found where a prospective juror admits partiality, or where the same can be inferred from his or her answers to *voir dire* questions. See United States v. Torres, 128 F. 3d 38, 43 (2d Cir. 1997).

Here, there is no indication on the record of bias on the part of the juror at issue. Wheel v. Robinson, 34 F.3d 60, 63-64 (2d Cir. 1994)(affording presumption of correctness to trial court's finding that jury was not biased because court interviewed individual jurors who expressly stated doubts, and received assurances that they were in fact impartial and had not prejudged the case), cert. denied, 514 U.S. 1066, 115 S. Ct. 1697, 131 L.E. 2d 560 (1995).

Accordingly, the Court denies the habeas petition on the ground involving the in-camera questioning of the juror.

F. Alleged Absence of Jurisdiction

The Petitioner also alleges that trial counsel's failure to challenge the jurisdictional nexus of the "enterprise" charged in the Third Superseding Indictment amounted to ineffective assistance of counsel. As best as can be discerned from the papers, the Petitioner asserts that, although the definition of "enterprise" includes an interstate commerce element, the statute makes violent acts a federal offense without requiring any relationship between the prohibited act or other violent act and interstate commerce. Stated another way, the Petitioner appears to mount a facial challenge to the Violent Crime in Aid of Racketeering ("VCAR") statute, 18 U.S.C. § 1959 and 18 U.S.C. § 924(c)(1) as unconstitutional in violation of the Commerce Clause.

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987).

Article I, Section 8 of the U.S. Constitution authorizes Congress "to regulate Commerce . . . among the several States." The Commerce Clause empowers Congress to regulate or prohibit "activities that substantially affect interstate commerce," even if the activity is purely local. United States v. Lopez, 514 U.S. 549, 558, 115 S. Ct. 1624, 131 L.Ed.2d 626 (1995). "The substantial effect requirement is satisfied when criminal statutes contain a jurisdictional element,

which ensures through case-by-case inquiry, that the prohibited act affects interstate commerce." <u>United States v. Torres</u>, 129 F.3d 710, 717 (2d Cir. 1997).

In the Court's view, the Petitioner's facial challenge to the VCAR statute must fail. Section 1959(a) punishes any act of violence committed by an individual to maintain his status in an enterprise. The statute states in relevant part:

> Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished – for murder, by death or life imprisonment
> . . . .

18 U.S.C. § 1959(a)(1).

In <u>Torres</u>, the Second Circuit found that section 1959 is a valid exercise of the Commerce Clause power of the Congress. In doing so, the court found that the jurisdictional element contained in Section 1959(b)(2), which defines "enterprise" as an association "engaged in, or the activities of which affect, interstate or foreign commerce," satisfied <u>Lopez</u> by "requiring a nexus between the offense in question and interstate commerce." <u>Torres</u>, 129 F.3d at 717; <u>United States v. Guang Ju Lin</u>, 707 F. Supp. 2d 443, 446 (S.D.N.Y. 2010)(explaining <u>Torres</u>).

In addition, any argument by the Petitioner that 18 U.S.C. § 924(c)(1) exceeds Congress's authority under the Commerce Clause is also without merit. <u>United States v. Walker</u>, 142 F.3d 103, 111 (2d Cir. 1998)("[W]e find that § 924(c)(1) regulates an economic activity that substantially affects interstate

commerce and, as such, is a valid exercise of Congressional power under the Commerce Clause.").

Relying on United States v. Garcia, 68 F. Supp. 2d 802 (E.D. Mich. 1999), the Petitioner also challenges the constitutionality of these statutes as applied in this case. In particular, the Petitioner asserts that the alleged criminal conduct constituted intrastate activity with no close or substantial effect on or relationship to interstate commerce, thereby depriving the government of jurisdiction to charge and try him for these offenses.

The enterprise at issue in Garcia was a 12–member street gang called the "Cash Flow Posse." Id. at 804. The Garcia court found that, "in this case, the enterprise's connection to interstate commerce is weak." Id. Indeed, the proof of interstate nexus in Garcia was weak, consisting of the following facts: (1) that certain gang members drove within the state on an interstate highway; (2) that a gun used by the gang may have crossed state lines; (3) that members of the gang purchased guns at a trade center utilized at times by out-of-state purchasers; and (4) that one gang member heard a rumor about the possibility of Cash Flow Posse "cells" existing in other states. Id. at 811–12. The Garcia court ruled that this level of interstate nexus was sufficient to sustain the racketeering charge under Section 1962 but not the murder-in-aid-of-racketeering charge under Section 1959, which required a stronger nexus between the charged racketeering enterprise and interstate commerce. Id. at 812.

"To the Court's knowledge, the holding of Garcia – which is intensely fact-specific – has not been adopted or affirmed by any other court [] since it was

decided. The Court does not find <u>Garcia</u> to be persuasive." <u>United States v. Boyle</u>, S1 08 CR 534 (CM), 2009 WL 2032105, at *9 (S.D.N.Y. July 9, 2009). Moreover, "even if this Court were persuaded by the reasoning of <u>Garcia</u>, which it is not, [the Petitioner] offers no evidence that his specific crimes did not affect interstate commerce." <u>Tse v. United States</u>, 112 F. Supp. 2d 189, 195 (D. Mass. 2000) <u>vacated in part on other grounds</u>, 290 F.3d 462 (1st Cir. 2002).

To the contrary, as noted by the government in its letter dated October 30, 2009 in opposition to the Petitioner's post-trial motion for a judgment of acquittal, at the second trial, (1) former MS-13 member William Reyes testified that, as part of his membership in MS-13, he personally transported firearms from Long Island to an MS-13 clique in Maryland that was in need of weapons (Tr. at 662-63.); (2) former MS-13 member Bonerge Menjivar testified that he harbored an MS-13 member from New Jersey who fled to New York because law enforcement authorities in New Jersey were attempting to apprehend him and the gang sent money to El Salvador to support members there (Tr. at 1292-93, 1357-59.); and (3) the government introduced substantial evidence regarding the arsenal of weapons purchased and/or manufactured in other states with MS-13 monies. Accordingly, the Court finds that substantial evidence proved there was a jurisdictional interstate nexus for the charged MS-13 enterprise.

Thus, the Court denies the habeas motion on the ground involving the lack of a jurisdictional interstate nexus.

G.  The Petite Policy

The Petitioner's reliance on the Department of Justice's Petite Policy is also unavailing.  This policy precludes the initiation or continuation of a federal prosecution following a prior state or federal prosecution based on substantially the same acts or transactions, absent a finding that the prosecution serves "compelling interests of federal law enforcement." <u>Thompson v. United States</u>, 444 U.S. 248, 248, 100 S. Ct. 512, 62 L. Ed. 2d 457 (1980) (internal quotation marks omitted).

However, the Second Circuit has "squarely held that the Petite policy affords defendants no substantive rights.  Rather, that policy is merely an internal guideline for exercise of prosecutorial discretion, not subject to judicial review." <u>United States v. Cote</u>, 544 F.3d 88, 104 (2d Cir. 2008)(internal citations and quotation marks omitted).  As such, the Petitioner's trial counsel's failure to invoke this policy as a bar to his federal prosecution was not constitutionally deficient. Accordingly, the Court denies the habeas motion on this Petite Policy ground.

H.  As to Appellate Counsel

Finally, the Petitioner argues that Tomao, his appellate counsel, failed to raise on direct appeal any of the foregoing contentions.  The two-prong <u>Strickland</u> test applies to the evaluation of appellate counsel as well as trial counsel. <u>Aparicio v. Artuz</u>, 269 F.3d 78, 95 (2d Cir. 2001); <u>see</u> <u>also</u> <u>Clark v. Stinson</u>, 214 F.3d 315, 318 (2d Cir. 2000); <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994).

In this case, none of the Petitioner's claims support a finding of ineffective assistance of trial counsel.  Therefore, the appellate counsel's failure to raise these claims cannot be deemed constitutionally deficient. <u>See</u> <u>Muir v. New York</u>, 07 Civ.

7573 (JGK), 2010 U.S. Dist. LEXIS 51624, at *26 (S.D.N.Y. May 26, 2010) ("The underlying claims that the petitioner contends are a basis for an ineffective assistance of counsel claim are meritless, and appellate counsel should not be deemed ineffective for failing to raise meritless claims on appeal.").  Further, an appellate attorney "need not advance *every* argument, regardless of merit, urged by the appellant." Evitts v. Lucey, 469 U.S. 387, 394, 105 S. Ct. 830, 834, 83 L. Ed. 2d 821 (1985).

### III.    CONCLUSION

The Petitioner's § 2255 habeas petition is dismissed in its entirety, and the Clerk of the Court is instructed to terminate any pending motions and to close this case.


**SO ORDERED.**
Dated: Central Islip, New York
January 29, 2014


_____*Arthur D. Spatt*_____
ARTHUR D. SPATT
United States District Judge