UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
LEDWIN CASTRO,

                Petitioner,

             -against-

**DECISION AND ORDER**
12-cv-5024 (ADS)

UNITED STATES OF AMERICA,

                Respondent.
---------------------------------------------------------X

**APPEARANCES:**

**Ledwin Castro** *Pro Se*
68721-053
Big Sandy U.S. Penitentiary
P.O. BOX 2068
INEZ, KY 41224

**United States Attorney for the Eastern District of New York**
*Attorneys for the Respondent*
610 Federal Plaza
Central Islip, NY 11722
    By: John J. Durham
        Charles N. Rose
        Assistant United States Attorneys

**SPATT, District Judge.**

On January 29, 2014, the Court issued a Memorandum of Decision and Order that dismissed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2255, filed by the presently incarcerated Petitioner Ledwin Castro (the "Petitioner") *pro se*, on the ground that he was denied his constitutional right to effective assistance of counsel in his federal trial.

Presently pending before the Court is the Petitioner's motion pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 59(e) to alter or amend the January 29, 2014 order. For the reasons that follow, that motion is denied.

## I. BACKGROUND

A. <u>The Drive-By Shootings and the Arrest</u>

The Petitioner is an admitted member of MS-13, a nationwide criminal gang organized into local subunits referred to as "cliques." David Vasquez was a member of a Long Island clique headed by the Petitioner known as the Freeport Locos Salvatruchas. The evidence at the first trial showed that, on June 18, 2003, the Petitioner, along with several others, including Vasquez, Ralph Admettre, and Nieves Argueta, drove to a laundromat in Hempstead to search for members of SWP, a rival gang. From a van parked in a gas station parking lot across the street, Vasquez opened fire on a crowd outside the laundromat, wounding Ricardo Ramirez and Douglas Sorto.

Less than an hour later, the Petitioner and the others traveled to a delicatessen in Freeport where they encountered a group of young black men that they believed to be members of the Bloods, another rival gang. At Vasquez's urging, Argueta shot Carlton Alexander seven times in the back. Despite being struck by multiple gunshots, Alexander survived. Between July 10, 2003 and July 17, 2003, the Nassau County Police Department arrested the Petitioner, Vasquez, Admettre, and Argueta for their roles in the shootings.

Following the Petitioner's arrest, he and his defense counsel met with then Nassau County Assistant District Attorney Frank X. Schroeder. Based upon these

discussions, the Nassau County District Attorney's Office ("NCDAO") determined that the Petitioner was willing to provide important information concerning the homicide death of Jaime Figueroa. Ultimately, the NCDAO offered the Petitioner the opportunity to plead to a lesser charge in connection with the June 18, 2003 shootings in exchange for his cooperation in the Figueroa homicide prosecution. Pursuant to this agreement, the NCDAO called the Petitioner as a witness in a grand jury proceeding related to the Figueroa homicide. Before the grand jury, the Petitioner testified that he was a member of MS–13 and stated that Johnny Rodas and Mario Jimenez, fellow MS–13 gang members, admitted to him that they murdered Figueroa.

On May 12, 2004, former ADA Schroeder was cross-designated to serve as a Special Assistant United States Attorney to assist in the United States Attorney's Office's investigation of MS–13.

B. Indictment and the First Trial

Meanwhile, in February 2004, a federal grand jury indicted the Petitioner and thirteen others for various offenses stemming from a series of violent incidents on Long Island between August 2000 and September 13, 2003. A superseding indictment (the "Indictment") was returned on June 23, 2005. The Indictment described MS–13, or "La Mara Salvatrucha," as a gang that originated in El Salvador but had members throughout the United States. It accused the defendants of being members of MS–13, and it alleged that MS–13 members "engaged in criminal activity" in order to increase their position within the organization. According to the Indictment, MS–13 constituted an "enterprise" under 18 U.S.C. §

1959(b)(2) because it was an ongoing organization the activities of which affected interstate commerce. Furthermore, the Indictment stated that MS–13 engaged in two forms of racketeering activity under 18 U.S.C. § 1961(1): (1) acts and threats involving murder as defined by New York State law, and (2) narcotics trafficking as defined by federal law.

The Indictment charged the Petitioner with ten counts. Count One charged him with conspiracy to commit assaults with a dangerous weapon in order to maintain and increase his position within the MS–13 racketeering enterprise, in violation of 18 U.S.C. § 1959(a)(6). Counts Six, Seven, and Eight charged the Petitioner with assault with a dangerous weapon in order to maintain or increase his position in the MS–13 racketeering enterprise, in violation of 18 U.S.C. § 1959(a)(3). Counts Twelve, Thirteen, and Fourteen accused the Petitioner of discharging a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). The Indictment identified the relevant crimes of violence as the assaults charged in Counts Six, Seven, and Eight. Finally, Counts Seventeen, Eighteen, and Nineteen charged the Petitioner with using an explosive to commit a felony – the felonies being the assaults charged in Counts Six, Seven, and Eight – in violation of 18 U.S.C. § 844(h)(1).

Judge Leonard D. Wexler of the Eastern District of New York, who was originally assigned to the criminal case, severed the charges against the Petitioner and co-defendant Vasquez from the charges against some of their co-defendants. The remaining co-defendants pleaded guilty to assault. The Petitioner, and Vasquez, proceeded to trial. During the course of the trial, which took place

between July 19, 2005 and July 26, 2005, the Government called Hector Alicea, an officer with the New York State Police, as an expert witness. In particular, Alicea testified with regard to MS-13's history, structure, and modes of communication.

The Government also called the three shooting victims, Admettre, and another co-defendant to testify against the Petitioner and Vazquez. In addition, the Government offered into evidence telephone records, the gun used in the shootings, ballistics reports, and the Petitioner's post-arrest confession.

C. The First Jury Verdict and Sentencing

Of relevance here, on July 26, 2005, the jury found the Petitioner guilty on all ten counts. In a special verdict, the jury further found that MS–13 was an enterprise that affected interstate commerce; that MS–13 engaged in acts and threats of murder; that the Petitioner was a member of the MS–13 enterprise; and that the Petitioner had participated in the conspiracy to assault and in the charged assaults in order to maintain or increase his position within MS–13. However, the jury failed to find that MS–13 engaged in the racketeering activity of narcotics trafficking.

One week later, the Petitioner asked the district court to set aside the verdict and enter a judgment of not guilty pursuant to Federal Rule of Criminal Procedure ("Fed. R. Crim. P.") 29, or in the alternative, to vacate the judgment and order a new trial pursuant to Fed. R. Crim. P 33. First, he claimed that the jury's failure to find that MS–13 engaged in narcotics trafficking was fatal to the verdict because the Indictment had not pleaded the two racketeering activities (murder and narcotics trafficking) in the alternative. Second, he argued that the proof of MS–13's involvement in murder was insufficient. Third, he asserted that the Government

5

had failed to prove that the MS–13 enterprise had an existence separate from the charged offenses. The district court docket does not indicate when or how the district court denied the motion, but that it did so is clear from the progression of the case to sentencing.

On January 6, 2006, the district court sentenced the Petitioner principally to 60 years plus 1 day of imprisonment. The 1 day consisted of concurrent 1-day sentences for the conspiracy count (Count One) and the three assault charges (Counts Six, Seven, and Eight).

D.  The First Appeal

On appeal, the Petitioner contended, among other things, that the district court erred in allowing the Government to call Alicea as an expert witness and that Alicea's testimony violated the Federal Rules of Evidence and the holding of the Supreme Court of the United States in Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). He also contended that the Government failed to prove that MS-13 was a racketeering enterprise.

On October 6, 2008, the Second Circuit vacated the conviction of the Petitioner and remanded the case to the District Court, finding that Alicea's testimony violated the Confrontation Clause of the Sixth Amendment and Fed. R. Evid. 703 because Alicea had taken out of court statements obtained from MS-13 members during custodial interrogations and conveyed the substance of those statements to the jury. United States v. Mejia, 545 F.3d 179, 199 (2d Cir. 2008). The Second Circuit concluded that, under the circumstances, Alicea was "simply summarizing an investigation by others that [was] not part of the record and

6

presenting it in the guise of an expert opinion." Id. (internal quotation marks and citations omitted). The Second Circuit further found that admitting Alicea's testimony was not harmless error because his testimony bore heavily on the material issues of whether MS-13 was an enterprise and whether the gang had engaged in acts and threats of murder. Id. at 200.

E. The Second Jury Verdict and Sentence

On remand, the criminal case was reassigned to this Court.

At the second trial, the Petitioner was represented by Peter J. Tomao, Esq. and Michael Annibale, Esq. Following a re-trial, on October 14, 2009, a jury convicted the Petitioner on all seven counts charged in the Third Superseding Indictment. In particular, he was convicted of conspiracy to commit assault with a dangerous weapon, 18 U.S.C. § 1959(a)(6) (Count One), assault with a dangerous weapon, 18 U.S.C. § 1959(a)(3) (Counts Two, Three, and Four), and the use of a firearm in relation to a crime of violence, 18 U.S.C. § 924(c)(1) (Counts Five, Six, and Seven).

On December 30, 2009, the Court sentenced the Petitioner to imprisonment for 60 years and one day confinement. A judgment was entered on January 12, 2010.

F. The Second Appeal

On his second appeal, the Petitioner claimed that (1) the government failed to establish the existence of the racketeering enterprise charged in the Third Superseding Indictment; (2) several of the district court's evidentiary and discovery rulings were incorrect; and (3) his case should be remanded for resentencing

because certain counts of conviction were "duplicitous."  On the appeal, the Petitioner was represented by attorney Tomao.

On February 24, 2011, the Second Circuit affirmed the conviction and sentence, rejecting the Petitioner's arguments.

On October 3, 2011, the United States Supreme Court denied the Petitioner's request for a writ of certiorari.

G.  The Habeas Petition

On October 4, 2012, the Petitioner filed a *pro se* petition pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence.  The Petitioner contended that trial counsel (1) failed to object to a purportedly prejudicial error in the Court's jury instruction on the standard for the government's burden of proof; (2) failed to move to suppress the Petitioner's incriminating post-arrest statements allegedly obtained in violation of his Fifth and Sixth Amendment rights; (3) failed to object to the Court's in-camera questioning of a juror, thereby violating the Petitioner's Fifth and Sixth Amendment rights and Fed. R. Crim. P. 43; (4) failed to move to dismiss the charges based on the alleged absence of a jurisdictional interstate nexus for the charged MS-13 enterprise; and (5) failed to move to dismiss the Third Superseding Indictment pursuant to the government's "Petite Policy."  In addition, the Petitioner asserted that his appellate counsel failed to raise these legal arguments on appeal.

H.  The January 29, 2014 Memorandum of Decision and Order

As noted above, on January 29, 2014, the Court issued a Memorandum of Decision and Order dismissing the Petitioner's § 2255 habeas petition in its entirety. The portions of that decision relevant to the current motion are described later.

E. The Present Motion

On February 24, 2014, the Petitioner moved pursuant to Fed. R. Civ. P. 59(e) to "alter or amend" the January 29, 2014 decision to correct a clear error and to prevent manifest injustice. In particular, the Petitioner again claims that he did not receive a fair trial because the Court improperly (1) instructed the jury regarding Pinkerton liability and (2) failed to dismiss the counts of the Indictment for lack of federal jurisdiction.

## II. DISCUSSION

A.  The Legal Standard Governing a Rule 59(e) Motion

Under Rule 59(e), the Court "may alter or amend judgment to correct a clear error of law or prevent manifest injustice." ING Global v. United Parcel Serv. Oasis Supply Corp., 757 F.3d 92, 96 (2d Cir. 2014)(quoting Schwartz v. Liberty Mut. Ins. Co., 539 F.3d 135, 153 (2d Cir. 2008)).  Other grounds for Rule 59(e) relief include "an intervening change of controlling law, [or] the availability of new evidence." See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)(internal quotation marks omitted)(describing the major grounds for reconsideration).  However, Rule 59(e) may not be used to "relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." ING Global, 757 F.3d at 97 (internal quotation marks omitted).

B.  The Pinkerton Charge

Under the Supreme Court's decision in Pinkerton v. United States, 328 U.S. 640, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946), it is a "fundamental tenet of the law of conspiracy" that a defendant can be held criminally liable for the reasonably foreseeable acts of his co-conspirator. United States v. Vario, 943 F.2d 236, 240 (2d Cir. 1991).  As the Second Circuit has explained, "[t]he Pinkerton theory permits criminal liability of a conspirator 'for the substantive crimes committed by his co-conspirators to the extent those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if he did not himself participate in the substantive crimes.'" United States v. Bala, 236 F.3d 87, 95 (2d Cir. 2000) (quoting United States v. Romero, 897 F.2d 47, 51 (2d Cir. 1990)); see also United States v. Parkes, 497 F.3d 220, 232 (2d Cir. 2007)(holding that, with respect to Pinkerton, "'a defendant who does not directly commit a substantive offense may nevertheless be liable if the commission of the conspiracy was reasonably foreseeable to the defendant as a consequence of their agreement'")(quoting Cephas v. Nash, 328 F.3d 98, 101 n. 3 (2d Cir. 2003)); accord United States v. Wiley, 846 F.2d 150 (2d Cir. 1988).

Here, in support of his habeas petition, the Petitioner argued that, in the Pinkerton charge, the Court improperly instructed the jury on the presumption of innocence and that his counsel's failure to object to these instructions violated his Sixth Amendment right to effective assistance of counsel.  Specifically, the Petitioner maintained that the use of the word "may" rather than "must" in the following Pinkerton instruction was constitutionally deficient:

10

> If the government has proven all five bases of these elements, beyond a reasonable doubt, for the specific substantive crime you are considering, then you <u>may</u> find the defendant guilty of the substantive crimes charged in Counts Two through Seven, even if he did not personally participate in the acts constituting the substantive crime. The reason for this rule is simply that a coconspirator who commits a substantive crime pursuant to a conspiracy is deemed to be the agent of the other conspirators.
>
> If, however, the government failed to prove any of these five elements, then you <u>may</u> not find the defendant guilty of the substantive crime charged in the count you are considering. Namely, Counts Two through Seven, unless the government proved beyond a reasonable doubt, that the defendant personally committed or aided and abetted the commission of the crime charged in those counts.

(Transcript ("Tr."), at 1675.)(emphasis added).

In the January 29, 2014 Memorandum of Decision and Order, the Court found no error in this <u>Pinkerton</u> charge, "observ[ing] no material difference between the directive to jurors that, if the government fails to meet its burden of proof, they 'must find the defendant not guilty' and "may not find the defendant guilty.'" (Doc No. 16, at 12.) The Court distinguished <u>United States v. Birbal</u>, 62 F.3d 456 (2d Cir. 1995), wherein the Second Circuit found that the district judge's instruction to the jury that it "may" rather than "must" acquit if the government failed to prove guilt beyond a reasonable doubt "gave the jury the clearly unlawful option of convicting on a lower standard of proof." <u>Id.</u> at 460.

In moving to reconsider this determination, the Petitioner again challenges the propriety of this <u>Pinkerton</u> charge. Although the Court's January 29, 2014 determination on this issue focused on the second-cited paragraph above, the Court finds no error either in the use of "may" rather than "must" in the first-cited paragraph above. If anything, the directive to the jury that it "may" rather than

"must" find the defendant guilty of the substantive crimes charged in counts two through seven in the event the government proved the elements of the relevant substantive crime, worked in the Petitioner's favor.

The case of Bloomer v. United States, 162 F.3d 187 (2d Cir. 1998) is distinguishable. In that case, as in Birbal, the contested jury charge included language that the jury "may" acquit if the prosecution failed to prove the defendant's guilt beyond a reasonable doubt. See Miller v. Phillip, 813 F. Supp. 2d 470, 487 (S.D.N.Y. 2011)(summarizing Birbal and Bloomer)), aff'd, 505 F. App'x 69 (2d Cir. 2012). By contrast, here, the Court made no such error in its jury instruction. As previously mentioned, there is "no material difference between the directive to jurors that, if the government fails to meet its burden of proof, they 'must find the defendant not guilty' and 'may not find the defendant guilty.'" (Doc No. 16, at 12.)

For these reasons, the Court denies the Petitioner's Rule 59(e) motion on the basis that the Court erred in rejecting his challenge to the Pinkerton charge.

C.  The Alleged Absence of Federal Jurisdiction

The Petitioner disclaims any facial challenge to the Violent Crime in Aid of Racketeering ("VCAR") statute, 18 U.S.C. § 1959 and 18 U.S.C. § 924(c)(1) as unconstitutional in violation of the Commerce Clause. Rather, relying on United States v. Garcia, 68 F. Supp. 2d 802 (E.D. Mich. 1999), the Petitioner challenges the constitutionality of these statutes as applied in this case. In particular, the Petitioner asserts that the alleged criminal conduct constituted intrastate activity

with no close or substantial effect on or relationship to interstate commerce, thereby depriving the government of jurisdiction to charge and try him for these offenses.

However, the Court previously rejected this precise argument, reasoning as follows:

> The enterprise at issue in Garcia was a 12–member street gang called the "Cash Flow Posse." Id. at 804. The Garcia court found that, "in this case, the enterprise's connection to interstate commerce is weak." Id. Indeed, the proof of interstate nexus in Garcia was weak, consisting of the following facts: (1) that certain gang members drove within the state on an interstate highway; (2) that a gun used by the gang may have crossed state lines; (3) that members of the gang purchased guns at a trade center utilized at times by out-of-state purchasers; and (4) that one gang member heard a rumor about the possibility of Cash Flow Posse "cells" existing in other states. Id. at 811–12. The Garcia court ruled that this level of interstate nexus was sufficient to sustain the racketeering charge under Section 1962 but not the murder-in-aid-of-racketeering charge under Section 1959, which required a stronger nexus between the charged racketeering enterprise and interstate commerce. Id. at 812.
>
> "To the Court's knowledge, the holding of Garcia – which is intensely fact-specific – has not been adopted or affirmed by any other court [] since it was decided. The Court does not find Garcia to be persuasive." United States v. Boyle, S1 08 CR 534 (CM), 2009 WL 2032105, at *9 (S.D.N.Y. July 9, 2009). Moreover, "even if this Court were persuaded by the reasoning of Garcia, which it is not, [the Petitioner] offers no evidence that his specific crimes did not affect interstate commerce." Tse v. United States, 112 F. Supp. 2d 189, 195 (D. Mass. 2000), vacated in part on other grounds, 290 F.3d 462 (1st Cir. 2002).
>
> To the contrary, as noted by the government in its letter dated October 30, 2009 in opposition to the Petitioner's post-trial motion for a judgment of acquittal, at the second trial, (1) former MS-13 member William Reyes testified that, as part of his membership in MS-13, he personally transported firearms from Long Island to an MS-13 clique in Maryland that was in need of weapons (Tr. at 662-63.); (2) former MS-13 member Bonerge Menjivar testified that he harbored an MS-13 member from New Jersey who fled to New York because law enforcement authorities in New Jersey were attempting to apprehend him and the gang sent money to El Salvador to support

13

>     members there (Tr. at 1292-93, 1357-59.); and (3) the government
>     introduced substantial evidence regarding the arsenal of weapons
>     purchased and/or manufactured in other states with MS-13 monies.
>     Accordingly, the Court finds that substantial evidence proved there
>     was a jurisdictional interstate nexus for the charged MS-13
>     enterprise.

(Doc No. 1, at 20-21.)

On reconsideration, the Petitioner has failed to "show that any controlling authority or facts have actually been overlooked . . . and which, had they been considered, might have reasonably altered the result before the court." Howard v. United States, No. 11-CV-5208 (FB), 2012 WL 6212842, at *1 (E.D.N.Y. Dec. 13, 2012)(citation and quotation marks omitted).

For this reasons, the Court denies the Petitioner's Rule 59(e) motion on the ground that the Court erred in rejecting his challenge to the jurisdictional interstate nexus.

### III. CONCLUSION

Based on the foregoing, the Petitioner's motion under Rule 59(e) to amend or correct the Memorandum of Decision and Order dated January 29, 2014, dismissing his § 2255 habeas in its entirety, is denied. The case remains closed. The Clerk of the Court is respectfully directed to mail a copy of this order via regular first class mail to the Petitioner.

**SO ORDERED.**
Dated: Central Islip, New York
October 29, 2014

/s/ *Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge